UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| BENJAMIN MELENDEZ-ROCHA,<br><br>        Movant,<br><br>    vs.<br><br>UNITED STATES OF AMERICA,<br><br>       Respondent. | 4:13-CV-04102-LLP<br><br>4:09-CR-40029-27<br><br>REPORT AND RECOMMENDATION |

## INTRODUCTION

Movant Benjamin Melendez-Rocha ("Melendez-Rocha") has filed a motion to vacate, correct, or set-aside the 348-month sentence of imprisonment imposed on him.  See Civ. No. 13-4102, Docket No. 1 (hereinafter "Civ."). Respondent the United States of America ("government") moves the court to dismiss Mr. Melendez-Rocha's motion without holding an evidentiary hearing. See Civ. Docket No. 18.  This matter was referred to this magistrate judge for a recommended disposition by the October 16, 2014, standing order of the Honorable Karen E. Schreier, district judge.  The following is this court's recommendation.

## FACTS

**A.     The Underlying Criminal Action**

Benjamin Melendez-Rocha was indicted in this court on March 3, 2010. See United States v. Melendez-Rocha, CR 4:09-CR-40029-LLP-27, Docket No.

723 (hereinafter "CR").  That indictment was superseded on April 7, 2010.  See CR Docket No. 778.  Mr. Melendez-Rocha made his initial appearance on April 26, 2010.  Id. at Docket No. 808.  Attorney Margaret VandeMore Gillespie was appointed to represent Mr. Melendez-Rocha.  Id. at Docket No. 740.  The final indictment against Mr. Melendez-Rocha charged him with conspiracy to distribute a mixture or substance containing 500 grams or more of methamphetamine, conspiracy to distribute 100 kilograms or more of marijuana, and conspiracy to commit money laundering.  Id. at Docket No. 778, Counts 1, 2, and 3.

The facts of the case, as recounted by the Eighth Circuit, are as follows.  On July 12, 2007, New Mexico law enforcement stopped a vehicle in which three individuals were traveling including codefendants Jorge Martinez-Salgado and Jose Burgos-Valdez.  See United States v. Diaz-Pellegaud, 666 F.3d 492, 497, 502 (8th Cir. 2012).  The subsequent search of that vehicle yielded more than three kilograms of methamphetamine and a loaded .45 caliber handgun.  Id. at 497.  The three occupants of the vehicle were en route from Phoenix, Arizona, to Sioux Falls, South Dakota.  Id.  Evidence seized from the vehicle led to other searches, including two homes in Sioux Falls from which over one and one-half kilograms of methamphetamine, cash, and drug distribution paperwork were seized.  Id.  Evidence derived from the traffic stop also led law enforcement to intercept a drug shipment bound for Sioux Falls that contained another kilogram of methamphetamine and approximately 50 pounds of marijuana.  Id.

2

Ultimately, 27 defendants were indicted by the government as part of this drug scheme.  Id.  Twenty-one of those defendants pleaded guilty, with the majority of those defendants cooperating with the government.  Id.  Six of the codefendants, including Mr. Melendez-Rocha, opted to go to trial.  Id.  Mr. Melendez-Rocha was convicted of conspiracy to distribute methamphetamine and conspiracy to launder money as asserted against him in counts 1 and 3 of the indictment.  Id.

The jury specifically found Mr. Melendez-Rocha guilty of conspiracy to distribute 500 grams or more of a mixture or substance containing methamphetamine.  See CR Docket No. 982, at pp. 9-10 (Verdict Nineteen).  He was found not guilty of conspiracy to distribute marijuana.  Id. at p. 11 (Verdict Twenty-Two).  In finding Mr. Melendez-Rocha guilty of conspiracy to commit money laundering, the jury made a specific finding that he had conducted a financial transaction with the intent to promote the carrying on of the unlawful distribution of a controlled substance.  Id. at p. 12 (Verdict Twenty-Four).  The jury also specifically found that he conducted a financial transaction designed in whole or in part to conceal or disguise the nature, location, source, ownership or control of the unlawful distribution of a controlled substance.  Id.

**B.    The Sentencing**

**1.    The First Sentencing**

Prior to Mr. Melendez-Rocha's sentencing hearing, his counsel Ms. Gillespie filed a sentencing memorandum.  See CR Docket No. 1044.  In that memo, she objected to the four-point enhancement under USSG

3

§ 3B1.1(a) accorded to her client in the Presentence Report ("PSR") for being an organizer or leader. Id. at p. 2. Although Ms. Gillespie acknowledged that Mr. Melendez-Rocha combined with four or more persons to commit the crime, she argued that the three-point enhancement under USSG § 3B1.1 for a manager or supervisor was more appropriate. Id.

In the sentencing memo, Ms. Gillespie also urged the court to apply a downward departure or downward variance to sentence Mr. Melendez-Rocha to the statutory mandatory minimum of 240 months. Id. at p. 5. A sentence of 240 months was sufficient to satisfy the factors of 18 U.S.C. § 3553(a), but not more than necessary. Id. at 5-7.

Mr. Melendez-Rocha appeared before the district court for sentencing on December 10, 2010. See CR Docket No. 1115. Ms. Gillespie had made 58 objections to the PSR. Id. at p. 5. The court went through most of those without much substantive discussion, other than to note that it was relying solely on testimony from the trial and disregarding statements made about Mr. Melendez-Rocha's conduct that were not presented at trial. Id. at pp. 5-8.

The one objection discussed in the sentencing memo was discussed at length. The PSR accorded a four-level increase in the base offense level for Mr. Melendez-Rocha as an organizer or leader. Id. at pp. 8-10. Ms. Gillespie objected, pointing out that he should only be given three points as a manager because his role in the conspiracy was far less than that of codefendant Jesus Pellegaud. Id. at 10-11. The court agreed and sustained Ms. Gillespie's

4

objection to the application of the leader/organizer enhancement and applied only the three-point enhancement.  Id. at 11.

 After ruling on Mr. Melendez-Rocha's objections, the court stated that his total offense level under the USSG was 41.  Mr. Melendez-Rocha was in Criminal History Category VI, which yielded a USSG range of 360 months to life imprisonment.  Id. at 12.  The court sentenced him to 360 months on the methamphetamine conspiracy charge and 240 months on the money laundering conspiracy charge, both sentences to run concurrently and also to run concurrently with sentences that were imposed in Arizona.  Id. at 15.

### 2.     The Resentencing

 Prior to the trial, the government had filed an information providing notice to Mr. Melendez-Rocha that it would seek increased punishment in the event of a conviction pursuant to 21 U.S.C. § 851(a) on the basis of Mr. Melendez-Rocha's prior conviction on August 24, 2009, in Maricopa County Superior Court in Phoenix, Arizona, for possession for sale of a dangerous drug.  See CR Docket No. 962.  After his sentencing, the government filed a withdrawal of that information.  See CR Docket No. 1055.

 The basis for the government's withdrawal of the request to seek increased punishment was that the methamphetamine conspiracy on which Mr. Melendez-Rocha was convicted at trial took place from 2003 until July, 2009.  Id. at p. 1.  The sentence on the Arizona conviction which formed the basis of the government's request to enhance punishment was entered on August 24, 2009—after the end of the methamphetamine conspiracy charged

5

in this court.  Id. at p. 2.  Because § 851 requires that the prior conviction be final *before* the conviction on which a defendant is being sentenced in order to qualify for enhanced punishment, the government withdrew the information. Id. at pp. 3-4.

Because of the government's withdrawal of its request for enhanced punishment, the court reconvened another sentencing hearing on December 18, 2010.  See CR Docket No. 1118.  The court vacated the initial sentence and held a resentencing.  Id. at p. 3.  Ms. Gillespie made a proportionality argument, asserting that Mr. Melendez-Rocha's sentence of 360 months' imprisonment was disproportionate to the sentence received by codefendant Jesus Diaz-Pellegaud, who also received 360 months.  Id. at 6-7.  Counsel argued that Pellegaud had a much more extensive role in the conspiracy than Melendez-Rocha, especially given the fact that the jury found Pellegaud guilty of the marijuana conspiracy in addition to the methamphetamine conspiracy, while Mr. Melendez-Rocha was found guilty only in the methamphetamine conspiracy.  Id.  In addition, Ms. Gillespie urged the court to correct the record as to Mr. Melendez-Rocha being a career offender under the USSG and place him in Criminal History Category III instead of IV.  Id. at p. 7.

The court agreed with Ms. Gillespie.  Id. at pp. 7-8.  Because of the timing of the current conspiracy and the date on which the Arizona convictions became final, the court did not apply the career offender enhancement under the USSG and reduced Mr. Melendez-Rocha's criminal history category to III.

Id. at p. 8.  However, a total offense level of 41 and criminal history category III
continued to yield a USSG range of 360 months to life imprisonment.  Id.

Based on Ms. Gillespie's argument about sentencing disparities between
Pellegaud and Mr. Melendez-Rocha, the court granted a downward variance.
Id. at pp. 13-14.  Instead of the original sentence of 360 months'
imprisonment, the court reduced the sentence on the methamphetamine
conspiracy count to 348 months.  Id. at p. 14.

**C.**    **The Appeal**

Following his conviction and sentencing, Mr. Melendez-Rocha appealed.
Id.  He challenged the district court's denial of his two motions for mistrial after
counsel for one of the codefendants violated the court's *in limine* order that
Mr. Melendez-Rocha's immigration status not be mentioned at trial.  Id. at 503-
504.  He also argued that his sentence was substantively unreasonable
because the district court allegedly failed to consider his age, family situation,
educational status, and that he was a non-violent drug offender.  Id. at 504.

As to the first issue, the Eighth Circuit noted the court had given a
curative instruction on both occasions just after co-counsel violated the court's
*in limine* order.  Id. at 503.  The court stated it would not reverse the district
court's denial of the mistrial motions unless, despite the court's curative
instructions, "the verdict was 'substantially swayed' by the prejudicial
comment."  Id. (citing United States v. Urick, 431 F.3d 300, 304 (8th Cir. 2005)
(quoting United States v. Coleman, 349 F.3d 1077, 1087 (8th Cir. 2003))).  The
court concluded the improper remarks had not affected the verdict because the

other evidence of Melendez-Rocha's guilt was substantial.  Id. at 503-04 (noting the trial testimony of four separate witnesses as to Melendez-Rocha's drug distribution and financial activities).

As to the second issue, the court noted the district court in imposing its 348-month sentence had varied below the advisory sentencing range for Mr. Melendez-Rocha under the United States Sentencing Guidelines ("USSG"). Id. at 504.  Where a district court has varied downward in imposing sentence, the Eighth Circuit stated it was "nearly inconceivable" that the court abused its discretion.  Id.  The court noted the transcript of the sentencing hearing revealed a number of letters had been submitted on behalf of Mr. Melendez-Rocha, the court recognized Mr. Melendez-Rocha's non-criminal business activities and the law-abiding character of his family, defense counsel made extensive argument on Mr. Melendez-Rocha's behalf, and the sentencing court stated it had considered the factors set forth at 18 U.S.C. § 3553(a) in imposing sentence.  Id.  The Eighth Circuit found Mr. Melendez-Rocha's sentence to be substantively reasonable and affirmed his convictions in all respects.  Id.  The Eighth Circuit issued its decision on Mr. Melendez-Rocha's appeal on March 16, 2012.  Id. at 492.

On June 14, 2012, Mr. Melendez-Rocha filed a petition for a writ of certiorari with the United States Supreme Court.  That petition was denied on October 1, 2012.  See CR Docket No. 1223.

**D.    Mr. Melendez-Rocha's Motion to Vacate, Set Aside or Correct His Sentence**

Pursuant to 28 U.S.C. § 2255, Mr. Melendez-Rocha filed a motion to vacate, set aside or correct his sentence on September 19, 2013.  See Civ. Docket No. 1.[1]  In his motion, Mr. Melendez-Rocha asserts the following claims:

1.    His rights under the Fifth and Sixth Amendments were violated by the district court when it imposed a sentence that was "7 offense levels & 6 criminal history levels" higher than what was presented in the indictment or what was proved beyond a reasonable doubt at trial.

2.    Defense counsel was ineffective under the Sixth Amendment by:

   a.    failing to compel the government to comply with its discovery obligations under "Brady, Giles, & Giglio exculpatory & impeachment evidence" and

   b.    failing to preserve the record concerning all unlawful enhancements.

3.    The government violated Mr. Melendez-Rocha's Fifth Amendment due process rights by failing to turn over all "Brady, Giles & Giglio material exculpatory & impeachment evidence" within 14 days of Mr. Melendez-Rocha's arraignment.

See id.

The government moves to dismiss Mr. Melendez-Rocha's motion without holding an evidentiary hearing.  See Civ. Docket No. 18.  The government argues that Mr. Melendez-Rocha procedurally defaulted grounds one and three listed above.  See Civ. Docket No. 19 at pp. 4-8.  The government also argues

---

[1] Mr. Melendez-Rocha had one year from the date his conviction became final—October 1, 2012—to file his motion under § 2255.  See 28 U.S.C. § 2255(f)(1).  Because he filed prior to September 30, 2013, Mr. Melendez-Rocha's motion is timely.  Id.

that ground one fails on the merits.  Id. at pp. 8-10.  Finally, the government

seeks dismissal of ground two as failing on the merits.  Id. at pp. 10-13.

## DISCUSSION

**A.      Scope and Procedure Applicable to a § 2255 Petition**

Section 2255 of Title 28 of the United States Code was enacted to supersede

habeas corpus practice for federal prisoners.  Davis v. United States, 417 U.S. 333,

343-44 (1974).  Prior to the enactment of § 2255, habeas claims had to be brought

in the district where the prisoner was confined, resulting in overburdening those

districts where federal correctional institutions were located and presented

logistical issues because the record in the underlying criminal case was often in a

distant location.  United States v. Hayman, 342 U.S. 205, 212-16 (1952).  The

enactment of § 2255 resolved these issues by requiring that the motion be filed in

the sentencing court.  Id.

The scope of a § 2255 motion is seemingly broader than the scope of a

habeas petition, the latter of which is typically limited to allegations of a

constitutional dimension.  Section 2255 allows a federal prisoner to "vacate, set

aside or correct" a federal sentence on the ground that "the sentence was imposed

in violation of the Constitution or laws of the United States, or that the court was

without jurisdiction to impose such sentence, or that the sentence was in excess of

the maximum authorized by law, or is otherwise subject to collateral attack."  See

28 U.S.C. § 2255.  Where the allegation for relief is *not* based on a violation of a

Constitutional or federal statutory right or an assertion that the court was without

jurisdiction, the Supreme Court has read a "fundamentality" requirement into

§ 2255–relief is available for only those errors which constitute a "fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." Hill v. United States, 368 U.S. 424, 428 (1962); see Peguero v. United States, 526 U.S. 23, 27-30 (1999).

Generally, petitioners are precluded from asserting claims pursuant to § 2255 that they failed to raise on direct appeal. United States v. Frady, 456 U.S. 152, 167-68 (1982); McNeal v. United States, 249 F.3d 747, 749 (8th Cir. 2001). When a § 2255 petitioner asserts a claim that is procedurally defaulted because it was not raised on direct appeal, the claim can only proceed after the petitioner has shown either: (1) actual innocence or (2) that the procedural default should be excused because there was both cause for the default and actual prejudice to the petitioner. Bousley v. United States, 523 U.S. 614, 621-22 (1998); McNeal, 249 F.3d at 749. Therefore, barring a claim of actual innocence, a petitioner must show both cause for why he failed to raise an issue on direct appeal as well as actual prejudice caused by the alleged errors.

Appellate courts generally refuse to review claims of ineffective assistance of counsel on direct appeal; such claims are, therefore, properly addressed in a 28 U.S.C. § 2255 motion such as the one here. See United States v. Lee, 374 F.3d 637, 654 (8th Cir. 2004) (ineffective assistance of counsel claims are not generally cognizable on direct appeal and will be heard only to prevent a miscarriage of justice or in cases where the district court has developed a record on the issue). Therefore, no procedural default analysis is required before examining petitioner's claims of constitutionally-deficient counsel.

11

**B.      Ineffective Assistance of Counsel**

**1.      General Law Applicable to Ineffective Assistance Claims**

As discussed above, it was not necessary for Mr. Melendez-Rocha to have presented his ineffective assistance of counsel claims on direct appeal before raising them in his § 2255 motion.  <u>Lee</u>, 374 F.3d at 654.  Those claims are properly before the court and may be considered on the merits.

The Sixth Amendment of the Constitution of the United States affords a criminal defendant with the right to assistance of counsel.  The Supreme Court "has recognized that 'the right to counsel is the right to effective assistance of counsel.' "  <u>Strickland v. Washington</u>, 466 U.S. 668, 698 (1984) (citing <u>McMann v. Richardson</u>, 397 U.S. 759, 771, n.14 (1970)).  <u>Strickland</u> is the benchmark case for determining if counsel's assistance was so defective as to violate a criminal defendant's Sixth Amendment rights and require reversal of a conviction.  <u>Id.</u> at 687.  "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness."  <u>Id.</u> at 687-688.  The defendant must also show that counsel's unreasonable errors or deficiencies prejudiced the defense and affected the judgment.  <u>Id.</u> at 691.  The defendant must show "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  <u>Id.</u> at 695.  In sum, a defendant must satisfy the following two-prong test.  <u>Id.</u> at 687.

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive

the defendant of a fair trial, a trial whose result is reliable.  Unless a
defendant makes both showings, it cannot be said that the conviction
or death sentence resulted from a breakdown in the adversary
process that renders the result unreliable.

Id.

"There is a presumption that any challenged action was sound trial strategy
and that counsel rendered adequate assistance and made all significant decisions
in the exercise of professional judgment." Hall v. Luebbers, 296 F.3d 685, 692
(8th Cir. 2002).  It is the petitioner's burden to overcome this presumption, and a
"petitioner cannot build a showing of prejudice on a series of errors, none of which
would by itself meet the prejudice test." Id.  Judicial scrutiny of attorney
performance is highly deferential, with a strong presumption that counsel's
conduct falls within the range of reasonable professional conduct. Strickland, 466
U.S. at 698.

### 2.   Application of the Law to Mr. Melendez-Rocha's Claims

#### a.   Failure to Force the Government to Turn Over Evidence

Mr. Melendez-Rocha argues that his counsel was ineffective under the
Sixth Amendment because she did not force the government to comply with its
duty to provide to Mr. Melendez-Rocha all exculpatory evidence in its
possession within 14 days of Mr. Melendez-Rocha's arraignment.  While
Mr. Melendez-Rocha is correct in positing that he was entitled to receive
exculpatory evidence in the government's possession, his claim fails because
there is no constitutional requirement that such evidence be turned over within
14 days of a defendant's arraignment.  He has also failed to show that there
was specific evidence the government had that was never turned over to him.

"The Due Process Clause of the Fifth Amendment requires the government to disclose to the accused favorable evidence that is material to guilt or punishment and not otherwise available to the defendant." See United States v. Santisteban, 501 F.3d 873, 877 (8th Cir. 2007) (citing Brady v. Maryland, 373 U.S. 83, 87 (1963); United States v. Bagley, 473 U.S. 667, 678 (1985)). "To prove a violation, the defendant must show that the evidence was both favorable and material, and that the government suppressed the evidence." Santisteban, 501 F.3d at 877 (citing United States v. Barraza-Cazares, 465 F.3d 327, 333 (8th Cir. 2006)). "The government has suppressed evidence when it was otherwise unavailable to the defendant, and the prosecution failed to disclose the evidence in time for the defendant to use it." Santisteban, 501 F.3d at 988 (citing Barraza-Cazares, 465 F.3d at 334). Impeachment evidence falls under Brady when the reliability of a given witness may be determinative of a defendant's guilt or innocence. Giglio v. United States, 405 U.S. 150, 154 (1972).

The court need not address the issue of whether counsel's performance was deficient if Mr. Melendez-Rocha cannot satisfy the second prong of the Strickland test by showing prejudice. See United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996) (failure to show prejudice is dispositive and court need not also address whether counsel's performance was deficient). Here, the court finds that prejudice has not been shown.

As an initial step in showing prejudice when asserting that a lawyer was ineffective for failing to discover evidence (in the government's possession or

14

otherwise), the habeas petitioner must identify the existence of admissible evidence which would have been discovered by a reasonably competent lawyer and how that evidence would have been helpful to the petitioner at his trial or sentencing.  United States v. McMillan, 606 F.2d 245, 248 (8th Cir. 1979).  Cf. Villasana v. Wilhoit, 368 F.3d 976, 978 (8th Cir. 2004) (to establish a Brady violation defendant must identify the evidence withheld and show that it was material to either guilt or punishment).

Here, Mr. Melendez-Rocha identifies no specific evidence whatsoever. Beyond merely using the conclusory word "exculpatory," and talking about broad categories of evidence ("all written, verbal, statements, testimonies, Grand Jury minutes, Transcripts document & material constituting 'exculpatory evidence within the meaning of: [Giles, Brady, and Giglio] see Civ. Docket No. 2 at p. 18), he never identifies what evidence was in the government's possession that his lawyer should have and failed to obtain for him.  Without a specific identification of evidence, the court cannot compare it to the evidence that was introduced at trial and determine whether the missing evidence was material to guilt or innocence.  By the same reasoning, the court is unable to evaluate whether it would have affected the trial outcome or Mr. Melendez-Rocha's sentencing.

In a later pleading, Mr. Melendez-Rocha states that the lawyer for codefendant Laura Welch took notes on various witnesses who had testified against Mr. Melendez-Rocha.  He posits that his lawyer sought to obtain copies of the lawyer's notes, but was "denied."  See Civ. Docket No. 12 at p. 3.  First,

15

the court notes that this is not evidence in the possession of the government, and so cannot constitute <u>Brady</u> evidence.  In addition, the allegation does not prove ineffective assistance as Mr. Melendez-Rocha concedes that his counsel sought this evidence.  <u>Id.</u>

The court concludes that Mr. Melendez-Rocha has not demonstrated prejudice under <u>Strickland</u>.  This court therefore recommends that his first ground for relief under the ineffective-counsel umbrella be denied.

### b.     Failure to Preserve Sentencing Errors

In his second ground in support of his ineffective assistance of counsel claim, Mr. Melendez-Rocha claims that his counsel was deficient because she failed to preserve issues relating to his sentencing enhancements.  <u>See</u> Civ. Docket No. 1, at p. 5.  The court interprets this allegation to mean that the court violated <u>Apprendi</u> and <u>Alleyne</u> when it imposed its sentence, as alleged in count one of Mr. Melendez-Rocha's § 2255 motion.  <u>See</u> <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), and <u>Alleyne v. United States</u>, ___ U.S. ___, 133 S. Ct. 2151 (2013).  The court understands Mr. Melendez-Rocha's ineffective assistance claim to be alleging that Ms. Gillespie should have made objections at the sentencing hearing pursuant to <u>Apprendi</u> and <u>Alleyne</u>.

An examination of Mr. Melendez-Rocha's PSR reveals how his sentence was calculated.  The methamphetamine charge he was convicted of at trial carried with it a mandatory minimum sentence of 20 years or 240 months and a statutory maximum of life imprisonment.  <u>See</u> PSR at p. 1; <u>see also</u> 21 U.S.C. § 841(b)(1)(A)(viii).  The mandatory minimum sentence for the drug conspiracy

16

charge was triggered by the jury's finding that Mr. Melendez-Rocha was guilty of conspiring to distribute a specific amount: "500 grams or more of a mixture or substance containing methamphetamine." See CR Docket No. 982 at pp. 9-10; 21 U.S.C. 841(b)(1)(A)(viii). The conviction for conspiracy to launder money carried with it a statutory maximum term of 20 years' incarceration. See PSR at p. 1.

The USSG offense level was calculated by grouping the two convictions together pursuant to USSG § 3D1.2(d) and then using the base offense level for the offense with the highest base offense level. See PSR at p. 13, ¶ 52; USSG 3D1.3(b). The offense level is determined by the total amount of harm or loss or the total quantity of drug involved. PSR at p. 13, ¶ 52. Here, Mr. Melendez-Rocha's conviction involved a 15 kilograms of methamphetamine which correlated to a base offense level of 38. Id. at ¶ 53. Pursuant to USSG § 3B1.1(a), the PSR increased the base offense level by 4 because it posited that Mr. Melendez-Rocha was a leader or organizer of the conspiracy involving five or more participants. Id. at p. 14, ¶ 56. As discussed above, Ms. Gillespie objected to this addition and the court agreed with her, imposing only a three-point addition for being a manager, but not an organizer or leader. See CR Docket No. 1115 at p. 11. Therefore, his total offense level was 41. Id.

The PSR classified Mr. Melendez-Rocha as a career offender under USSG § 4B1.1 because his current conviction was for a controlled substance offense at a time when the defendant was over the age of 18, and he had two prior controlled substance offenses, the Arizona convictions. See PSR at p. 14, ¶ 60.

17

However, the PSR noted that Mr. Melendez-Rocha's status as a career offender was moot because his total offense level was more than 37. Id. The PSR calculated that Mr. Melendez-Rocha had six criminal history points as a result of prior criminal convictions. Id. at p. 16, ¶ 65. This would have placed him in Criminal History Category III under the USSG, but his classification as a career offender resulted in his placement in Category VI. Id. at ¶ 66. As discussed above, the court rejected the classification of Mr. Melendez-Rocha as a career offender based on the timing of the two Arizona convictions and, instead, placed him in Criminal History Category III. See CR Docket No. 1118 at pp. 8, 13-14.

With a total offense level of 41 (as found by the court at sentencing), and a criminal history category of III (as found by the court at resentencing), Mr. Melendez-Rocha was subject to a USSG range of 360 months' imprisonment up to life in prison. The district court, as discussed above, granted a downward variance based on concerns about whether a sentence of 360 months for Mr. Melendez-Rocha would be proportionate, given that Mr. Pelleguad had already received a sentence of 360 months and had an admittedly larger role in the conspiracy. See CR Docket No. 1118 at pp. 8, 13-14. The final sentence Mr. Melendez-Rocha received was, then, 348 months' imprisonment.

The court is hard-pressed to find the "enhancements" Mr. Melendez-Rocha complains were applied to increase his sentence without first being submitted to a jury. His prior convictions placed him in Criminal History

Category III, but the Supreme Court specifically excepted prior convictions as a permissible factor that a court could take into consideration in fashioning a defendant's sentence without the fact of those convictions having first been submitted to a jury.  See Apprendi, 530 U.S. at 490 (stating "**Other than the fact of a prior conviction**, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt") (emphasis supplied).

Likewise, Alleyne held that any fact that triggers a statutory mandatory minimum sentence must be submitted to a jury and proved beyond a reasonable doubt.  Alleyne, ___ U.S. ___, 133 S. Ct. at 2155.  Here the fact that triggered the application of the mandatory minimum sentence in Mr. Melendez-Rocha's case— the quantity of methamphetamine involved—*was* submitted to the jury and proven beyond a reasonable doubt.  See CR Docket Nos. 778 & 982.  Under 21 U.S.C. § 841(b)(1)(A)(viii), the drug quantity necessary to trigger the 20-year mandatory minimum statutory sentence was 500 grams  or more of a mixture or substance containing methamphetamine.[2]  That quantity was specifically found by the jury.  See CR Docket No. 982 at pp. 9-10.  The statutory maximum for a drug offense involving 500 grams or more of a mixture or substance containing methamphetamine is life imprisonment.  See 21 U.S.C. § 841(b)(1)(A)(viii).

---

[2] The mandatory minimum sentence for 500 grams of a mixture or substance of methamphetamine is 10 years under § 841(b)(1)(A)(viii).  However, if one has a prior conviction for a felony drug offense, the mandatory minimum sentence is 20 years.  See 21 U.S.C. § 841(b)(1)(A)(viii).

19

Mr. Melendez-Rocha's USSG base offense level was set at 38 by using a drug quantity of 15 kilograms of methamphetamine.  See PSR at p. 13, ¶ 53. The jury did not make a finding of 15 kilograms.  However, the Eighth Circuit has held that, while a quantity of drugs sufficient to trigger a mandatory minimum must be submitted to and found by a jury under Apprendi, the sentencing court may find sentencing factors, including otherwise finding drug quantity, by a preponderance of the evidence.  See United States v. Diaz, 296 F.3d 680, 683-84 (8th Cir. 2002); United States v. Aguayo-Delgado, 220 F.3d 926, 933 (8th Cir. 2000).

Although Diaz and Aguayo-Delgado were decided before Alleyne, they appear to remain good law.  The Alleyne Court stated that its rationale was that a defendant must be able "to predict the legally applicable penalty from the face of the indictment."  Alleyne, ___ U.S. ___, 133 S. Ct. at 2161.  Here, that goal was met.  The 20-year-to-life penalty was completely evident from the face of the indictment—it contained the assertion that the conspiracy distributed 500 grams or more.  See CR Docket No. 778 at pp. 1-2 (Count I); see 21 U.S.C. § 841(b)(1)(A)(viii).  Mr. Melendez-Rocha knew his own criminal history.  The penalty was imminently predictable from the face of the indictment.  And Mr. Melendez-Rocha's sentence was within the range specified by statute as predicted from the face of the indictment.

The jury's findings in this case satisfied Apprendi and Alleyne.  Further, the drug quantity finding to support Mr. Melendez-Rocha's base offense level under the USSG was supported by evidence introduced at trial, which the

court found satisfied the preponderance of the evidence standard at sentencing.  No violation of Apprendi or Alleyne occurred with regard to the drug quantity attributable to Mr. Melendez-Rocha.  Diaz, 296 F.3d at 683-84; Aguayo-Delgado, 220 F.3d at 933.

The only other "enhancement" the court can glean from the record about which Mr. Melendez-Rocha may be understood to be complaining is the three-point increase in his base offense level under the USSG for being a manager. However, in ruling on Ms. Gillespie's 58 objections to the facts asserted in the PSR, the district court was assiduous in disregarding any fact which was not introduced in testimony at Mr. Melendez-Rocha's trial.  See CR Docket No. 1115.  Thus, even these facts were submitted to the jury.  The court can find no violation of Apprendi or Alleyne that occurred at sentencing.  It follows, then, that counsel cannot have been ineffective for failing to preserve these "errors."  The court concludes that Mr. Melendez-Rocha has failed to demonstrate that Ms. Gillespie's professional representation of him at sentencing was deficient.

Alternatively, if this one enhancement—the three points for being a manager—were somehow a violation of Apprendi/Alleyne, Mr. Melendez-Rocha's total offense level would have been a 38 (41 – 3 = 38).  With a total offense level of 38 and a criminal history category III, Mr. Melendez-Rocha's USSG range would have been 292 to 365 months.  His actual sentence of 348 months is squarely within that range.  Thus, Mr. Melendez-Rocha is also unable to show that Ms. Gillespie's putative errors prejudiced him.  Accordingly, because Mr. Melendez-Rocha fails to show either deficient performance by his counsel or

that he was prejudiced thereby, the court recommends that this ground for relief be denied.

**B.    Procedural Default**

The government argues that ground one (district court sentencing error) and ground three (prosecutorial misconduct) cannot be raised as grounds for relief in Mr. Melendez-Rocha's § 2255 motion because he did not raise those issues on direct appeal.  Thus, the government argues that these issues are procedurally defaulted and that Mr. Melendez-Rocha has not shown cause and prejudice, or actual innocence, in order to excuse that default.

In ground one, the court understands Mr. Melendez-Rocha to be raising an issue under Apprendi and Alleyne.  As discussed at length above, the holding of Apprendi is that any fact (other than prior convictions), that increases a defendant's penalty beyond the statutory maximum must be admitted by the defendant or proven to a jury beyond a reasonable doubt.  Apprendi, 530 U.S. at 490.  The holding of Alleyne is that "any fact that increases the mandatory minimum [penalty for a crime] is an 'element' that must be submitted to the jury." Alleyne, ___ U.S. ___, 133 S. Ct. at 2155.

Although Mr. Melendez-Rocha appealed the issue of the substantive reasonableness of his sentence, he never argued that his sentence was unconstitutional because the district court relied on facts to increase his sentence that were not found by a jury.  Indeed, Mr. Melendez-Rocha's argument on appeal regarding his sentence was just the opposite—that there were facts the sentencing court should have considered in arriving at his sentence that the court refused to consider.  See Diaz-Pellegaud, 666 F.3d at 503.  Thus, the government is correct

22

that Mr. Melendez-Rocha never raised ground one on direct appeal.  That ground is, therefore, procedurally defaulted.

Likewise, the government is correct in asserting that Mr. Melendez-Rocha never raised the issue of prosecutorial misconduct—withholding Brady material— in his direct appeal.  That issue, ground three, is also procedurally defaulted.

Mr. Melendez-Rocha argues in a later pleading that he asked his appellate counsel to raise issues one and three on appeal and that counsel refused or failed to do so.  See Civ. Docket No. 20.  Mr. Melendez-Rocha asserts that ineffective assistance of counsel on direct appeal constitutes cause sufficient to excuse his procedural default.  Id. (discussing Martinez v. Ryan, ___ U.S. ___, 132 S. Ct. 1309, 1317 (2012)).

Mr. Melendez-Rocha is correct that ineffective counsel on a direct appeal may serve to show "cause" for a procedural default.  Id.  But in order to excuse a procedural default, Mr. Melendez-Rocha must show cause *and* prejudice.  He has failed to show prejudice.  As discussed in more detail above, he has not identified any Brady evidence that the government withheld from him, so he cannot show prosecutorial misconduct.  It follows, then, that he was not prejudiced by the fact that his lawyer did not raise this issue on direct appeal.

Likewise, as discussed in greater detail above, Mr. Melendez-Rocha cannot show that the district court violated his constitutional rights under Apprendi/Alleyne.  Therefore, he cannot have been prejudiced by the fact that his lawyer did not raise this issue on direct appeal.

Mr. Melendez-Rocha procedurally defaulted on grounds one and three of his § 2255 motion.  He has failed to demonstrate cause and prejudice for that default.

23

Accordingly, this court recommends that those counts should be dismissed without holding an evidentiary hearing.

## CONCLUSION

The court respectfully recommends that Mr. Melendez-Rocha's § 2255 motion to vacate, set aside, or correct his sentence [Civ. Docket No. 1] be denied in its entirety.  The court also recommends that the government's motion to dismiss Mr. Melendez-Rocha's petition without holding an evidentiary hearing [Civ. Docket No. 18] be granted in its entirety.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Objections must be timely and specific in order to require de novo review by the District Court.  *Thompson v. Nix,* 897 F.2d 356 (8th Cir. 1990); *Nash v. Black,* 781 F.2d 665 (8th Cir. 1986).

DATED this 24th day of November, 2014.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge